BALISOK & KAUFMAN, PLLC
*Attorneys for Debtor*
251 Troy Avenue
Brooklyn, New York 11213
(718) 928-9607
Joseph Y. Balisok, Esq.

| | |
|---|---|
| *Hearing Date:* | *July 17, 2019* |
| *Hearing Time:* | *3:00 p.m.* |

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
In re:                                             :
                                                   :        Chapter 7
**FEIGE GREEN**                                     :        Case No.: 1−13−44897−ess
                                                   :        Judge: Stong, Elizabeth
                              Debtor.              :
SS No.: xxx-xx-6529                                :
---------------------------------------------------------------- X


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEBTOR'S MOTION TO
REOPEN HER CHAPTER 7 BANKRUPTCY CASE**


**BALISOK & KAUFMAN, PLLC**
**251 Troy Avenue**
**Brooklyn, New York 11213**
*Attorneys for Debtor*

## I.    **PRELIMINARY STATEMENT**

This memorandum of law is in further support of Debtor's motion to reopen this bankruptcy case. As the Court already knows, the instant motion sequence arises from Respondents' malevolent and bad-faith prosecution of an religious arbitration proceeding and later state-court confirmation action seeking to recover an alleged debt arising from an alleged breach of contract.

Petitioner's two prior submissions fully demonstrated that Respondents' conduct violated the discharge injunction. This memorandum further explains why the doctrines of res judicata and collateral estoppel have no bearing on this case. In short, these doctrines are inapplicable because the primary issue before the court is whether the alleged debt is fraud-based and thus non-dischargeable under 11 U.S. Code § 523(a), as Respondents argue in their opposition. This, of course, was never the issue presented in either the religious arbitration or the state court action, which concerned none of the non-dischargeable debts discussed in Section 523.

The issue of dischargeability—but none of the newly fathomed fraud claims—was raised in the state court case. Respondents argued that the debt was exempted from discharge since it was not listed on the schedules. However, the state court never addressed the necessity of including a dischargeable claim in the schedules. Upon seeking to reopen the case in this Court, our motion argued that was no need to include the alleged debt in the schedules because, in no-asset Chapter 7 cases, debts are automatically discharged even if not listed in the schedules.

The first time the issue of non-dischargeability based on the § 523(a) exceptions was raised was only after the state court made its decision, and at that, only in there memorandum in opposition to our motion to reopen. This is markedly different approach than the one taken in state

court. Therefore, this issue—which is the crux of the entire case at hand—was never decided by that court, so neither res judicata nor collateral estoppel apply.

It is also necessary to address the arguments made by Respondents in their Supplemental Affirmation, where they repeatedly note that Debtor moved to reopen the case. The emphasis they place on the fact that Debtor was the one who technically moved to reopen is not only irrelevant, but also misleading. It is irrelevant because it has no bearing on collateral estoppel. In order for res judicata or collateral estoppel to apply, there is a specific set of criteria that must be met and the question of who raised (or failed to raise) an issue is irrelevant to a finding of whether these doctrines apply. Second, this repeated emphasis is misleading because it pretends to lay the decision to litigate outside of bankruptcy court on the Debtor. In fact, it was the Respondent who forced the Petitioner into the religious court of arbitration, and it was again the Respondent who filed a petition with the state court to enforce the arbitration award. Petitioner merely engaged in the litigation she was dragged into.

Before 1970, the question of the dischargeability of individual debts was within the state court's jurisdiction. But because of abuses by overzealous creditors, which undermined the discharge of the bankrupt, Congress gave the bankruptcy courts exclusive jurisdiction to decide questions of dischargeability. This case is exactly the type of abuse the amendments sought to prevent. Respondents sat on a claim which, accepting their claims as true *arguendo*, would have accrued more than ten years before the bankruptcy discharge, but only attempted to recover it over a year after the discharge. Their strategy to circumvent the bankruptcy discharge was to sue Debtor in a religious arbitration in which bankruptcy law played no role. They knew Petitioner would appear because she is a devoutly observant Jew who would face significant consequences within the religious community—including potential excommunication and public shunning—if she

failed to appear. Moreover, under Jewish law, regardless of her participation, Petitioner would have been bound by any ex-parte rulings of the religious court, and its sanctions would have affected her and her family. So, in effect, she was forced to participate.

In light of these facts, this court should reopen this bankruptcy case to actually litigate the question of dischargeability, to admit evidence to see whether the alleged debt was incurred through fraud, and to provide sanctions for violating the Discharge Order. For these reasons, more fully stated below, Debtor respectfully asks this Court to grant the aforementioned motion to reopen this bankruptcy case.

## II.    **FACTUAL BACKGROUND**

The Court is respectfully referred to the previous submission on this motion sequence.

## III.    **LEGAL ARGUMENT**

### A.  **Respondent's Claim that Debt is Non-Dischargeable Since it was not Listed in the Debtor's Schedules is Unsubstantiated by Bankruptcy Law.**

In arguing that their claim was not discharged because neither the petition nor discharge order listed Respondent as a creditor, Respondent references *Shun Lun Wu*, in which the court found that the omitted debts were not discharged.[1] However, this case is not analogous to *Shun Lun Wu* since that was a Chapter 11 case, and the instant case is a no-asset Chapter 7 case. There are, of course, different exceptions to dischargeability of claims with regards to notice requirements. Indeed, as the court in *Shun Lun Wu* acknowledged, although section 523(a)(3)(A) applies in both chapter 7 and chapter 11 cases, notice principles are applied differently depending on the chapter. Since the entire argument is premised on the notice requirements, this is a core issue which differentiates the instant case from *Shun Lun Wu*.

---

[1] Shun Lun Wu v. May Kwan Si, Inc., 508 B.R. 606, Bankr. L. Rep. P 82,588.

In no-asset Chapter 7 cases in which creditors receive the typical notice that they should not file claims (*see* Official Form 309A), courts have held that all otherwise dischargeable claims are discharged even if not listed in the debtor's schedules.[2]

The rationale is straightforward: there is simply no prejudice. After all, the only notice that the unscheduled creditors holding such claims miss is a notice to *not* file a proof of claim and a notice of a deadline for dischargeability objections which such creditors do not have. The same lack of prejudice has been applied in the context of reopening no-asset cases to schedule inadvertently omitted creditors[3]. Courts have held that in such cases there is no need to amend the schedules because the debt is already discharged by operation of law.[4]

Since Petitioner's bankruptcy case was a no-asset Chapter 7 case in which the alleged claim had accrued before the bankruptcy, the omission of the claim from the schedules does not support the argument of non-dischargeability.

If Respondents now want to argue that their claim is non-dischargeable under 523(a)(3)(B) and is therefore without the exception to omission from the schedule, this is a novel issue has not been, but would have to be, properly litigated, adjudicated, and decided. Indeed, Respondents never once made this argument before submitting their opposition brief on the instant motion sequence.

---

[2] In re Parker, 313 F.3d 1267 (10th Cir. 2002) (debtor's intent in failing to list claim is irrelevant); In re Madaj, 149 F. 3d 467 (6th Cir. 1998); Judd v. Wolfe, 78 F.3d 110 (3d Cir. 1996); In re Beezley, 994 F.2d 1433 (9th Cir. 1993); In re Karras, 165 B.R. 636 (N.D. Ill. 1994) (debt dischargeable in no asset case even if debtor intentionally failed to schedule it); In re Anderson, 104 B.R. 427 (Bankr. N.D. Fla. 1989); In re Mendiola, 99 B.R. 864 (Bankr. N.D. Ill. 1989); In re Smolarick, 56 B.R. 720 (Bankr. W.D. Va. 1986).

[3] See In re Stone, 10 F.3d 285 (5th Cir. 1994).

[4] See, e.g., In re Parker, 313 F.3d 1267 (10th Cir. 2002) (debtor's intent in failing to list claim is irrelevant); In re Madaj, 149 F.3d 467 (6th Cir. 1998); In re Beezley, 994 F.2d 1433 (9th Cir. 1993); In re Stecklow, 144 B.R. 314 (Bankr. D. Md. 1992); In re Thibodeau, 136 B.R. 7 (Bankr. D. Mass. 1992).

Of course, the appropriate venue to decide this question would be in Bankruptcy Court since Congress entrusted questions of dischargeability to their discretion.[5] When a creditor seeks to collect its debt by suing a debtor in state court for not being listed on the schedule, such a case is properly removed to bankruptcy court once the affirmative defense of the discharge is raised.[6] In this case, Petitioner raised the discharge defense and included the Order of Discharge in her exhibits in state court, providing the basis to remove the case to bankruptcy court. This Court should therefore reopen the case to decide the question of non-dischargeability.

**B.  Neither Res Judicate not Collateral Estoppel Preclude this Court from Considering Whether the Alleged Debt Was Discharged.**

The prior state court decision between the parties involved a question of fact of whether the Petitioner owes the Respondent money—not whether the debt was discharge or exempted from discharge for fraud. Accordingly, the principles of res judicata and collateral estoppel do not apply here. Indeed, the interests underlying the related doctrines of collateral estoppel and res judicata are that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ."[7]  This memorandum will discuss the applicability of each doctrine in turn.

**1.  *Res Judicata***

i.  <u>Res judicata does not apply to the instant case according to the definition of res judicata as barring a claim by the same parties on the same cause of action.</u>

---

[5] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[6] See In re Guseck, 310 B.R. 400 (Bankr. E.D. Wis. 2004) (debtor could reopen case to seek dischargeability of nonscheduled debt in bankruptcy court).

[7] Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49; Montana v. United States, 440 U.S. 147, 153 (1979).

Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.[8] In other words, res judicata applies when the identical cause of action to a previous suit is raised as the basis of a cause of action in a second suit. However, res judicata does not preclude litigation of a second suit on a different cause of action.[9]

In this case, Petitioner's suite is based on a cause of action that is distinct from the cause of action which was decided in state court. There, arguments by the parties centered specifically on whether a distinct financial debt was owed to one party by another—namely, the cause of action was based on the claim that a contract existed between the parties and that the Petitioner breached that contract. In contrast, the cause of action that the current case is based on is whether the alleged debt owed by the Petitioner was discharged under the general discharge order, or conversely, whether this claim is considered non-dischargeable for fraud under section 523(a)(4).

Clearly, the cause of action in the state suit was not based on the question of non-dischargeability based on fraud, since the issue of fraud was never raised, let alone litigated and decided in that suit. As a matter of fact, not only was the question of non-dischargeability based on fraud not the cause of action in the state court, the Respondent never mentioned the fraud claim in its original petition to the court on November 29, 2015, its Order to Show Cause on December 17, 2015, its affirmations (both by Respondent and their attorney). Nor was the issue of fraud raised in the court's conformed copy of the Order to Show Cause on January 6, 2016 or its judgment on August 25, 2015.

---

[8] Montana v. United States, 440 U.S. 147, 153 (1979); Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); See 1B Moore's Federal Practice ¶ 0.405[1], pp. 621-624 (2d ed. 1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973).

[9] 1B Moore ¶ 0.401.

While Petitioner did present the Discharge Order as a defense in the state court, the Respondents did not reply with an argument of non-dischargeability based on fraud; rather, the Respondents argued that the claim was non-dischargeable based because they were omitted from the schedules. And it is on this basis—omission of the alleged creditor from the schedules—that the Graham Decision decided the question of the debt, and not on the claim of non-dischargeability based on fraud. Actually, the issue of fraud was never raised until Petitioner sought to reopen this case on the basis of litigating the question of dischargeability.

Because Petitioner's request to reopen the case is based on whether the claim is non-dischargeable, and since this cause of action is distinct from the one on which the state suit was based, this suit is not barred by res judicata.

Furthermore, in agreeing to hear this case, this Court should not controvert the purposes underlying res judicata, which serves to protect parties from the burden of relitigating matters which they have had a full and fair opportunity to litigate in a prior case, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions.[10] Here, the issue of whether the debt is a non-dischargeable fraud one has not been litigated and decided on the merits because the state court case was simply to confirm the arbitration award, and not to litigate the question of non-dischargeability based on fraud. Consequently, these parties never had "a full and fair opportunity to litigate this issue in the prior case between them," which is the premise upon which the principle of res judicata rests.

---

[10] Montana v. United States, 440 U.S. 147, 153 (1979).

Res judicata secondly protects against the risk of decreasing reliance on judicial action due to inconsistent decisions. This purpose is obviously not by application to this case since there is no prior decision which the current court can contradict.

In this manner, the instant case is analogous to *Brown v. Felsen*.[11] There, the Supreme Court determined whether a state court proceeding, which reduced a debt to judgment before bankruptcy, would have a res judicata effect on a bankruptcy proceeding when the bankruptcy court subsequently considered the dischargeability of the same debt under section 17a(2) of the Bankruptcy Act, in which fraud is an element. In that case, the collection suit granted recovery to the creditor against the debtor, and like the case at hand, neither the stipulation nor the resulting judgment indicated the cause of action on which defendant's liability to the plaintiff was based. Subsequently, the creditor sought to establish that the debtor's debt was not dischargeable because of the debtor's fraud.[12] The debtor claimed that there was no finding of fraud in the prior state court proceedings and that res judicata barred the bankruptcy court from litigating the issue. The Supreme Court rejected defendant's contention that res judicata should apply, holding that a bankruptcy court is not limited to the judgment and record of a prior state court proceeding when considering the dischargeability of a debt.[13] Further, the Court reasoned that in an ordinary collection proceeding, considerations material to discharge are irrelevant. The creditor in a collection proceeding is suing on the instrument which created the debt, and the cause of action is for non-payment of the debt.[14]

---

[11] . Brown v. Felsen, 99 S. Ct. 2205 (1979).

[12] Id.

[13] Id.

[14] Id.

In the subsequent bankruptcy proceeding, the cause of action is based on the allegation that the debt is not dischargeable, which in this case, as well as in *Brown*, is fraud. The instant case is analogous to *Brown* in that it shares the main issue: whether the bankruptcy court can hear a case in which a judgment has already been rendered in a prior court. As in *Brown*, since the cause of action in the instant case is different from the one in the prior case, there is no bar to the Bankruptcy court in deciding the issue of dischargeability based on fraud.

  ii. <u>A dischargeability cause of action is always separate and distinct from any state-law cause of action.</u>

Even assuming, *arguendo*, that the cause of action in the present case is the same as that in the former, courts have held that res judicata is necessarily inapplicable where the dischargeability cause of action is separate and distinct from any state-law cause of action.[15] Therefore, res judicata does not apply to this case since the cause of action in the instant case is based on dischargeability, and is therefore separate and distinct from the state court cause of action. Moreover, Congress intended the dischargeability cause of action to be decided only in the bankruptcy courts (see more below).[16] Therefore, this court should reopen the case to decide the issue of dischargeability.

  iii. <u>Res judicata does not apply even when the cause of action is the same.</u>

Some courts have defined res judicata more stringently, holding that where the parties and the cause of action are the same, the *prima facie* presumption is that the questions presented for decision were the same unless it appears that the merits of the controversy were not involved in the issue. The rule in such a case being that where every objection urged in the second suit was

---

[15] In re Rahn, 641 F.2d 755 (9th Cir. 1981); In re McKenna, 4 B.R. 160 (Bankr. N.D. Ill. 1980); In re Richards, 7 B.R. 711 (Bankr. S.D. Fla. 1980).

[16] In re Shuler, 722 F.2d 1253 (5th Cir. 1984); Carey Lumber co. v. Bell, 615 F. 2d 370 (5th Cir. 1980); In re Houtman, 568 F.2d 651 (9th Cir. 1978); In re Eskenazi, 6 B.R. 366 (B.A.P. 9th Cir. 1980).

open to the party within the legitimate scope of the pleadings in the first suit, and that the whole defense might have been presented in that trial, the matter must be considered as having passed in rem judicatam, and the former judgment in such a case is conclusive between the parties.[17] Except in special cases, the plea of res judicata applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of the issue, and which the parties, exercising reasonable diligence, might have brought forward at the time.[18] Other courts have similarly defined res judicata as barring second suits in which parties seek to raise issues which the party negligently omitted from its prior case and which parties "exercising reasonable diligence, might have brought forward at the time."[19]

Here, the cause of action is based on whether the alleged debt is non-dischargeable due to fraud, while the cause of action in the state court was about whether there was a contract and whether that contract was breached, with the subsidiary question of whether the debt was non-dischargeable based on its omission from the schedules. However, even if the causes of action were the same in this case, even this more stringent definition of res judicata would not apply since the parties never had an opportunity to fully litigate the "merits of the controversy" as required by the Outram Court.[20] Unlike a standard trial in which questions are presented for decision and a "whole defence might have been presented in that trial," the state court did not hold a trial or a hearing, or allow the parties to present papers, or in any rigorous manner examine the substantive

---

[17] Outram v. Morewood, 3 East, 358; Greathead v. Broomley, 7 Term, 452.

[18] 2 Taylor, Evid. sect. 1513.

[19] Henderson v. Henderson, 3 Hare, Ch. 115; Bagot v. Williams, 3 B. & C. 241; Roberts v. Heine, 27 Ala. 678; Safford v. Clark, 2 Bing. 382; Miller v. Covert, 1 Wend. 487.

[20] Outram v. Morewood, 3 East, 358.

issues at hand or examine the underlying claims.[21] Rather, the court followed the limited procedure afforded arbitration confirmation proceedings. This type of proceeding, by its nature, limits the parties from raising issues because in an action to enforce an arbitration award, a court's objective is to give effect to the arbitration agreement as a whole, and not to examine the justifications for it. Therefore, there was no opportunity in "which the parties, exercising reasonable diligence, might have brought forward" these issues, and rather than negligence or a lack of "reasonable diligence," the reason this issue was not raised was because there was no opportunity for it.[22] Thus, even under this narrow understanding of res judicata, res judicata would not bar the current suit.

In *Brown v. Felsen*, the court rejected the respondent's argument that res judicata barred petitioner from raising new claims: "It makes little sense, however, to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum."[23] Here, Respondents' contention that Petitioner waived her right to resolve the dischargeability question should also be rejected, as the state court (as well as the religious court) was not the appropriate forum for questions of dischargeability.

Collier on Bankruptcy, in discussing whether obtaining a judgment prevents an inquiry into the original nature of a debt under the 1903 amendments to the Act of 1938, speaks directly to the issue this court now faces. "In general the reduction of a claim to a judgment does not affect its nature as a nondischargeable debt, dischargeability being dependent upon the nature of the claim behind the judgment."[24] "In order that a judgment based upon a fraudulent representation may be

---

[21] Id.

[22] See id.

[23] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[24] Collier on Bankruptcy, Vol. 1A, 17.16(4), pp. 1643—6.

excepted from the operation of a discharge, the record in the action must show that fraud and deceit were the 'gist and gravamen' of the action."[25]

Here, while there is a judgment regarding the alleged debt, that does not preclude the court from inquiring into the original nature of the debt, since there is ambiguity regarding the basis for the prior court's ruling, and certainly, the question of fraud was not the "gist and gravamen" of the action.

    iv.   <u>Res judicata does not apply to a different cause of action in which the issue is different.</u>

Some courts have held that res judicata applies even when the cause of action in the second suit differs from that in the prior suit. However even in those cases, the court requires that while the cause of action need not be the same, the issue raised in the second suit must be identical to the one decided in the prior suit. Norton v. Huxley, 13 Gray 285, 79 Mass. 285, 1859 WL 7319 (res judicata applies only when the point or question in issue is the same in both cases and the judgment is conclusive in relation to all matters in the suit which were put in issue). The Norton court held that a prior judgment has no effect upon questions not involved in the issue, and which were neither open to inquiry nor the subjects of litigation. Id.

In this case, the question of fraud as a basis for non-dischargeability, which would form the point or question in issue before this court, was never granted a conclusive judgment; in fact, the issue was never even raised in the prior court. Therefore even under this stricter standard of res judicata illustrated by the Norton Court (that res judicata applies even when the cause of action in the second suit is the same as that in the first suit), res judicata still would not apply in this case

---

[25] Id.

since the requirement in the Norton court for res judicata is that the point or question in issue be the same, and here it is not.

In the Petitioner's Reply, the case of Allied Chemical was brought to illustrate the requirements for estoppel. Allied Chem., an Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp., 72 N.Y.2d 271, 276 (1988). In their Supplemental Affirmation of Counsel (Doc. 44), the Respondent referenced this case, however they failed to apply the case in a substantial or relevant manner, but rather merely stated that the instant matter is estopped because a state court already decided that the alleged debt is non-dischargeable based on its omission from the schedules. The Respondent is correct in analogizing that case to the instant case, since in Allied Chemical the court found that res judicata did not apply because the relevant issue had not been previously decided and resolved by the court. Id. As in Allied Chemical, in the instant case, the issue at hand – non-dischargeability based on fraud – was not decided. In fact, the claim of fraud was not raised either by the parties or the judge so there was no final and complete ruling, and therefore res judicata does not apply.

     v.    <u>Res judicata would not apply even if the issue of fraud was raised in the prior court.</u>

        a.   *Res Judicata does not apply even when fraud is raised in the prior court because the state definition of fraud is different from the bankruptcy court definition of fraud.*

Even if the Respondent had pleaded all the elements that would give rise to non-dischargeability and then obtained a default judgment in state court, courts have held that res judicata does not apply under *Brown v. Felsen*.[26] The *Brown* court reasoned that "considerations

---

[26] Brown v. Felsen, 99 S. Ct. 2205 (1979); See also, In re Eskenazi, 6 B.R. 366, 368 (B.A.P. 9th Cir. 1980); In re Iannelli, 12 B.R. 561, 563 (Bankr. S.D.N.Y. 1981); Franks v. Thomason, 4 B.R. 814, 821 (Bankr. N.D. Ga. 1980); In re Mckenna, 4 B.R. 160, 162 (Bankr. N.D. Ill. 1980); In re Mallory, 1 B.R. 201 (Bankr. N.D. Ga. 1979). See also In re McMillan, 579 F.2d 289 (3d Cir. 1978).

material to discharge are irrelevant to the ordinary collection proceeding since the creditor sues on the instrument which created the debt and not on the other factors which are involved in bankruptcy proceedings.[27] It further reasoned that even if fraud issues are presented in state court, since the state law concept of fraud is different from the bankruptcy court definition of fraud, the elements are not identical.[28] For example, the Bankruptcy Act requires actual fraud perpetrated by the debtor on the creditor. Fraud implied by law is insufficient.[29]

The *Brown* court explained that refusing to apply res judicata would permit the bankruptcy court to make an accurate determination regarding the fraud issue.[30] The court further stated that this is the type of question Congress intended that the bankruptcy court would resolve.[31] It concluded that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of the debt, since the state courts are not the appropriate forum for those decisions, while the bankruptcy courts are well suited to adjudicate them.[32]

Here, the state court did not decide the issue of dischargeability based on fraud, nor did Respondents plead the necessary elements for fraud. Regardless, even if dischargeability based on fraud was raised, the law provides that res judicata does not apply and the issue of dischargeability must be decided by reopening this case in this bankruptcy court.

        b.   *Res Judicata does not apply even when fraud is raised in the prior court because such application would undercut congressional intent.*

---

[27] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[28] Id. at 2211.

[29] See 1A Collier on Bankruptcy ¶ 17.16[3] (14th ed. 1978).

[30] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[31] Id.

[32] Id.

The *Brown* Court reasoned that the adoption of a policy of res judicata would undercut congressional intent to commit bankruptcy-specific issues like dischargeability to the jurisdiction of the bankruptcy court.[33]

   vi.   <u>Res judicata does not preclude the court from looking behind the state court record in deciding the question of dischargeability.</u>

It is well settled that the court will look behind a note, a mortgage, or even a judgment, to ascertain the nature of the debt, and, if it is ascertained to be one which a discharge in bankruptcy does not bar, it will be so adjudged.[34] Courts have refused to apply res judicata in determining the dischargeability of debts previously reduced to judgment.[35]

Even though some courts have applied res judicata and refused to go behind the state record to establish fraud, in those cases, the prior court had made a decision that liability was specifically one for damages arising out of breach of contract, and not fraud, unlike the instant case.[36] Those courts held that when a creditor could have raised the fraud claim in state court, res judicata bars it from being litigated in a second court. However in the instant case there was no opportunity to raise the fraud claim (see discussion of nature of state court proceeding, below). Furthermore, since Nicholas, every other court of appeals has rejected res judicata. Disallowing a second court from going behind the judgment in determining the nature of the indebtedness overlooks two principles which the cases place beyond dispute: Where an action is brought upon a note, and a discharge in

---

[33] Id.

[34] Township of Madison v. Dunkle, 114 Ind. 262, 16 N.E. 593; American Sur. Co. v. McKiearnan.

[35] Fidelity & Casualty Co. v. Golombosky, 133 Conn. 317, 322-324, 50 A.2d 817, 819-820 (1946).

[36] In re Nicholas, 510 F.2d 160.

bankruptcy is set up as a defense, proof is admissible to show that the underlying debt was created by fraud or one of the other excepted causes.[37]

In summary, Brown v. Felsen settled the res judicata question faced by bankruptcy courts when determining whether a debt is non-dischargeable because of fraud, apparently holding that res judicata does not apply.[38] Specifically, when a pre-bankruptcy state court proceeding has reduced a debt to judgment without commenting on whether the debtor is liable for fraud, the bankruptcy court will not be limited to the state court record to determine whether the debt is non-dischargeable because of fraud.

Because res judicata may govern grounds and defenses not previously litigated, it blockades unexplored paths that may lead to truth. It therefore is to be invoked only after careful inquiry. Id. In this case, as in Brown, neither the interests served by res judicata nor the policies of the bankruptcy act would be well served by foreclosing Petitioner from opening this case in bankruptcy court, and precluding this court from reopening the case can only serve to block the path to truth.

### 2. *Collateral Estoppel*

For these same reasons, this case is not precluded under the doctrine of collateral estoppel. That doctrine states that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.[39] In other words, "[w]here a question of

---

[37] Fidelity & Casualty Co. v. Golombosky, 133 Conn. 317, 322-324, 50 A.2d 817, 819-820 (1946).

[38] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[39] Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 2-3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion); Montana v. United States, 440 U.S. 147, 153 (1979).

fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action."[40]

Collateral estoppel effect requires four things: (1) the issue sought to be precluded must be identical to that involved in the prior action; (2) that issue must have been actually litigated; (3) the issue must have been material and relevant to the disposition of the first action; and (4) the determination must have been essential to the prior judgment.[41]

   i. <u>Identical Issues</u>

The first requirement is that the doctrine "must be confined to situations where the matter raised in the second suit is identical *in all respects* with that decided in the first proceeding and where the controlling facts . . . remain unchanged."[42] Respondents, in their Supplemental Affirmation of Counsel (Doc. 44), say that the claims are identical since the issue of dischargeability was raised in the prior case, and they further claim that the issue is the same and, in both cases, the sole basis for the suit. These statements are incorrect. In the prior suit, Respondents sought to confirm an arbitration decision rendered on the ground of breach of contract. When Petitioner argued discharge, Respondents did not argue non-dischargeability under section 523(a), instead arguing non-dischargeability for omission from the Debtor's bankruptcy schedules. This court is not deciding either the contract question or the question of a basic Chapter 7 no-asset notice issue. Rather, the core matter in this suit is the issue of non-dischargeability based

---

[40] Restatement of Judgments s 68(1) (1942).

[41] 1B Moore ¶ 0.443[1]; Haize v. Hanover Ins. Co., 536 F.2d 576, 579 (3d Cir. 1976); See also, Matter of McMillan, 579 F.2d 289 (3d cir. 1978).

[42] Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599-600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948).

on fraud. This is an entirely different and new matter from the one raised in the prior court, and so collateral estoppel effect is not given.

Additionally, this first element of collateral estoppel requires that the first court in determining the factual issues must have used standards identical to those standards which would be used by the second court.[43] The fraud-based non-dischargeability issue presented now was never even raised, let alone litigated, in the prior suit.[44] In this manner, the instant case is analogous to *In re Merrill*.[45] As in *Merrill*, the issue of fraud was never litigated, so the first requirement of the principle of collateral estoppel has not been met.

Moreover, courts have even refused to apply collateral estoppel where the court litigated the issue of fraud and made an implicit finding of fraud.[46] In *In re Ross*, the court remanded the case to the bankruptcy court to examine the records and see whether the required knowledge standard was used in determining fraud. The court held that if the required knowledge standard was not used or if the bankruptcy court cannot determine the standard used, the fraud issue must be relitigated.[47] Similarly, in *Brown v. Felsen* the court noted that collateral estoppel effect would

---

[43] Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings, 37 Wash. & Lee L. Rev. 281 (1980); In re Ross, 602 F.2d 604, 608 (3d Cir. 1979); In re Merrill, 594 F.2d 1064, 1067 (5th Cir. 1979); 1B Moore ¶ 0.443[1]; Brown v. Felsen, 99 S. Ct. 2205 (1979) (a prior state court decision may have collateral estoppel effect if the state court determined factual issues using standards identical to those of section 17 of the Bankruptcy Act 11 USC S 35 1976.); Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc., 575 F.2d 530, 535-36 (CA5, 1978) (Collateral estoppel precludes a party from relitigating an issue of ultimate fact that has already been decided in a prior adjudication.) Stevenson v. International Paper Co., 516 F.2d 103, 110 (CA5, 1975); See Garner v. Giarrusso, 571 F.2d 1330, 1336 (CA5, 1978) (The party asserting the estoppel must show that the issue to be concluded is identical to an issue decided in the prior litigation, that it was actually litigated, and the decision on the issue must have been necessary to the prior judgment).

[44] See In re Merrill, 594 F.2d 1064, 1067 (5th Cir. 1979) (finding that since fraud and conversion counts had been struck from the state court action and were thus never litigated, collateral estoppel did not bar consideration of such claims subsequently in federal court).

[45] Id.

[46] In re Ross, 602 F.2d 604, 608 (3d Cir. 1979).

[47] Id.

be given to a prior state court decision which litigated the issue of fraud, if the state law standards for fraud are identical to the Bankruptcy Act standards.[48]  In the instant case, there is no evidence that the issue of fraud was raised before. And even if Respondents argued that the issue of fraud was litigated in arbitration, they would still have to show that the standard the arbitrators used is identical to the knowledge standard required for fraud under section 523(a).

      ii.   <u>Actually Litigated</u>

Collateral estoppel secondly requires that the issue must have actually been litigated and adjudicated in the prior action through a trial on the merits in which issues were fully adjudicated, meaning that the court made specific findings concerning the issue based on bankruptcy standards.[49] Here, there was no litigation or actual adjudication through a trial on the merits in which the issue of non-dischargeability based on fraud was decided.

*Russel v. Place* is instructive. There, the "actual adjudication" element was illustrated by the situation where a creditor sues a debtor based on breach of contract and fraud.[50] The court decided that if the court addresses only the breach issue and does not address the fraud issue, there is collateral estoppel only with respect to the breach. The fraud issue was not adjudicated.[51]

Here, the state court decided only the contract issue (and also decided non-dischargeability based on omission from schedules), but it did not address any issue of fraud as a basis for non-dischargeability. As in *Russel*, there was no "actual adjudication" of the fraud issue, only the

---

[48] Brown v. Felsen, 99 S. Ct. 2205 (1979).

[49] Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings, 37 Wash. & Lee L. Rev. 281 (1980); In re Ross, 602 F.2d 604, 608 (3d Cir. 1979); In re Merrill, 594 F.2d 1064, 1067 (5th Cir. 1979); 1B Moore ¶ 0.443[1].

[50] Russel v. Place 94 U.S. 606, 609-10 (1876).

[51] Id.

contract issue. Therefore, collateral estoppel, if at all applicable, only applies to the breach, and not to the question of fraud.

Under *Russel*, collateral estoppel requires that "the precise question" (i.e. the question of fraud) was raised in the former suit and that the verdict could not have been rendered without deciding it. Any uncertainty or conjecture as to what was tried and decided means that "the whole subject-matter of the action will be at large and open to a new contention" and collateral estoppel does not apply.[52]

Here, fraud-based non-dischargeability was not tried, determined, or even raised until now. There is no evidence that the state-court verdict and judgment contemplated any fraud. Since estoppel must "be certain to every intent," and here there is conjecture as to what was involved and decided, there is no estoppel.[53]

In their Attorney's Affirmation in Opposition, Respondent cite *State v. Wilkes* as a source for collateral estoppel effect being given to a prior ruling on the issue of dischargeability. *State v. Wilkes* is not persuasive. In State, the parties actually litigated the question of whether there is dischargeability of student loans when the debtor dies or becomes disabled. In contrast, here, there was no litigation of the question of non-dischargeability based on fraud.

Similarly, in Respondent's Supplemental Affirmation of Counsel (Doc. 44), they reference the Graubard Affirmation which states that state courts and bankruptcy courts have concurrent jurisdiction to determine discharge, citing *In re* Massa. *In re* Massa.[54] They argue that the Graham court ruled on the specific issue of the claim not being listed on the schedules and decided that the

---

[52] Id.

[53] Id.

[54] 187 F.3d 292 (2d Cir. 1999) 187 F.3d 292.

claim survived discharge. They further state that Debtor had ample opportunity to litigate the issue of dischargeability in the state court.

The law that the Respondents cite is materially distinguishable from the instant. In *Massa*, the first case was based on the claim of fraud and false representation, and state court order explicitly determined that the debt was not discharged under sections 523(a)(2) and 523(a)(3). Applying the *Rooker-Feldman* doctrine, the bankruptcy court held that it lacked jurisdiction to overturn the State Court Decision.

However, in the instant case, the state court never examined fraud claims, so the *Rooker-Feldman* doctrine is irrelevant. So, while in some cases state courts have the power, subject to statutory exception, to determine the effect of a bankruptcy discharge, this is limited to cases where the state court actually litigated the relevant issues. Here, fraud was never litigated.[55]

Additionally, the contention that Petitioner had an opportunity to litigate an issue is of no moment. First, to the contrary, this second element of collateral estoppel requires that a matter be *actually* litigated. Second, Petitioner never actually had an opportunity to fully litigate the issues under the narrow scope of the state-court hearing. Third, Petitioner could never have raised the issue of fraud on her own because (a) there was no fraud and (b) Respondents never alleged it.

    a.  *Just as collateral estoppel effect is not given to default judgments (even when fraud is litigated), no collateral estoppel effect should be given to the instant judgment in which the state court merely enforced an arbitration award.*

The state court confirmation proceeding was so limited that Petitioner could not have raised the instant issues. In analyzing collateral estoppel (and res judicata), courts must examine the

---

[55] Additionally, case law reflects that even when the general rule of concurrent jurisdiction applies, the bankruptcy court has exclusive jurisdiction to determine whether a debt is excepted from discharge under §§ 523(a)(2), (4), and (6). In re Lopez, 2012 WL 3499444 at *4 (Bankr. S.D. Tex. 2012).

nature of the prior judgment. Arbitration confirmation proceedings serve solely to enforce arbitration awards, and the state court is bound by statute and case law limiting its discretion.[56]

In the instant case, there was no evidence of corruption, fraud, partiality or misconduct of the arbitrators, and the arbitrators were within their power in making a definite and final award regarding the matter of the debt, and in deciding whether a contract existed and was breached. Therefore, there was no reason for the state court to vacate the order.[57] Thus, Respondents supposition that Petitioner had "ample opportunity to litigate" the issue in state court is, of course, incorrect.[58]

It is also well settled that an arbitration award is not subject to judicial review for errors of law, for once the issue is properly before the arbitrator, questions of law and fact are merged in the award and are not within the power of the judiciary to resolve.[59] As a matter of fact, even if the court disagrees with the arbitrator's interpretation, or finds that the arbitrator misconstrued,

---

[56] Rochester City School Dist. V. Rochester Teachers Assn., 41 N.Y.2d 578, 394 N.Y.S.2d 179, 362 N.E.2d 977. The New York rules of civil procedure provide an extremely narrow basis for vacating an arbitration award, with most grounds requiring corruption, fraud, partiality or misconduct of the arbitrators, or proof that the arbitrators exceeded their power or failed to make a definite and final award.

[57] Other cases have held that courts will uphold arbitration awards "unless it is violative of a strong public policy, is totally irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power".  Matter of Hausknecht v Comprehensive Med. Care of N.Y., P.C., 24 AD3d 778, 779 [2005]; Matter of Town of Callicoon [Civil Serv. Empls. Assn., Town of Callicoon Unit] 70 NY2d 907, 909 [1987]; Matter of Allstate Ins. Co. v. Nicolosi, 227 AD2d 552 [1996]. Matter of Silverman [Benmor Coats], 61 NY2d 922, 308; Matter of Board of Educ. V. Dover-Wingdale Teachers' Asn., 61 NY2d 913; Matter of Local Div. 1179 [Green Bus Lines], 50 NY2d 1007; Rochester City School Dist. V. Rochester Teachers Assn., 41 NY2d 578. An award is irrational if there is no proof whatever to justify the award or the award gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties. Matter of Silverman [Benmor Coats], 61 NY2d 299, 308, 473 N.Y.S.2d 774, 461 N.E.2d 1261. Matter of National Cash Register Co. (Wilson), 8 N.Y.2d 377, 383, 208 N.Y.S.2d 951, 171 N.E.2d 302). Matter of Rockland County Bd. of Coop. Educ. Servs. v BOCES Staff Assn., 308 AD2d 452 [2003]. Short of these objections, state courts will not vacate arbitration awards.

[58] See In the Matter of Liberty Mutual Insurance Company, Appellant v. Sedgewick of New York, Respondent. see Matter of DiNapoli v Peak Automotive, Inc. 34 AD3d 674, 675 (2006).

[59] See Matter of Matra Bldg. Corp. v Kucker, 2 AD3d 732 (2003); Matter of Windsor Metal Fabrications v. Vescom Sys., 280 A.D.2d 607, 608, 720 N.Y.S.2d 804; see also, Matter of SCM Corp. v. Fisher Park Lane Co. 40 N.Y.2d 788, 793, 390 N.YS.2d 398, 358 N.E.2d 1024; North Syracuse Cent. School Dist. v North Syracuse Educ. Assn., 45 NY2d 195 (200l); Matter of Binghamton Civ. Serv. Forum v. City of Binghamton, 44 NY2d 23, 28.

disregarded, or misapplied substantive rules of law, that is still not a sufficient basis for the court to modify or vacate the award.[60]

Considering that the nature of the state court proceeding precluded the state court from examining the issues, litigating, or adjudicating them, this type of suit is similar to a default judgment, and the law regarding the application of collateral estoppel (and res judicata), in default judgments is equally applicable here.

The Restatement states that a default judgment has no collateral estoppel effect.[61] In fact, it considers an application of collateral estoppel in cases of default judgments to be an "oppressive application of the doctrine" which "misconceives the nature of a default judgment", in which issues are not actually litigated.[62] Cases which have given collateral estoppel effect to default judgments were decided prior to the amendments.[63] However, there is general agreement in courts today that collateral estoppel does not apply to cases of default judgments.[64]

In the bankruptcy context, the majority allows relitigating factual issues determined by the state court regarding the question of fraud so as not to defeat a major federal policy of granting exceptions to discharge only in certain circumstances specified by the bankruptcy Act.[65] This also protects the system from abuse of creditors who would go to state courts seeking default judgments in cases of bankruptcy, instead of raising those issues in the appropriate forum: bankruptcy court.[66]

---

[60] Matter of Local Div. 1179 [Green Bus Lines], 50 N.Y.2d 1007, 431 N.Y.S.2d 680, 409 N.E.2d 1354; Matter of Albany County Sheriff's Local 775 [County of Albany], 63 NY2d 654.

[61] The Restatement, Comments D and E, section 68 (1942).

[62] 1B Moore ¶ 0.444(2) at 4006-07.

[63] See, e.g., Heiser v. Woodruff 327 U.S. 726 (1946).

[64] Id.

[65] See Volume 1A Collier on Bankruptcy, (14th Ed.), P 17.16, pp. 1650-1650.3; Cowan's Bankruptcy Law and Practice, Supplement, s 433 at p. 102 (1973).

[66] In re McMillan, 579 F.2d 289 (3d Cir. 1978).

The opinion that default judgments fall outside the scope of the doctrine of collateral estoppel is widely accepted.[67] Just as collateral estoppel does not apply to default judgments, it does not apply to the enforcement of an arbitration award in which there was no chance to decide issues. To give collateral estoppel effect to the instant case would feed directly into Congress' concern of abuse by creditors that the restatement tried to protect against: that is, where creditors find back-door options, like ADR, to achieve judgment in their favor.

*In re McGhan* dealt with the question of the collateral estoppel effect on a default judgment for the creditor in state court. That court held that even if a default judgment is obtained by the creditor, the debtor should be able to litigate the dischargeability issue in bankruptcy court.[68] The court found that the bankruptcy court abused its discretion in refusing to reopen a case to decide whether debt was non-dischargeable under section 523(a)(3) and whether the discharge injunction was violated. Further, it found that the state court's order that the debt was not discharged improperly modified the bankruptcy court's discharge order.

As in *McGhan*, the state court suit was analogous to a default judgment, and so this court should reopen the case to decide whether the debt was non-dischargeable based on fraud. If the Debtor is correct in asserting that the debt was discharged, the creditor's judgment would be void under 11 U.S.C. § 524(a) (see full discussion, below).

In *McMillan*, which is remarkably similar to the instant case, the court refused to give collateral estoppel effect to a prior state court decision since, as a default judgment, the required

---

[67] In re Garland, 401 F. Supp. 608, 610 n.3 (E.D. Pa. 1975) (default judgment has no collateral estoppel effect in later suits involving different matters); In re Wong, 5 Bankr. Ct. Dec. 222, 225 (D. Ore. 1979) (default judgment doesn't give rise to rebuttable prima facie case of fraud); In re Conway, 3 Bankr. Ct. Dec. 365, 366 (N.D. Tex. 1977) (issues not litigated in default judgment); In re Garrard, 3 bankr. Ct. dec. 223, 225 (N.D. Ga. 1977).

[68] In re McGhan, 288 F. 3d 1172 (9th Cir. 2002).

elements for bankruptcy fraud had not been properly litigated.[69] There, a creditor filed a complaint of non-dischargeability based on fraud several months after the entry of the discharge order. On appeal from the bankruptcy court, the third Circuit ruled the Bankruptcy court was "still bound to ascertain . . . that the elements of an exception to dischargeability established by s 17a(2), have been fully proven by the Plaintiff," and he added that this cannot be accomplished by mere reference to the wording of an earlier judgment.[70] Rather, the court must review the prior proceedings and determine whether the plaintiff had shown the elements of conduct required under that section.[71] The reason that the parties were not barred from relitigating facts necessary to the judgment rendered by the state court was because the bankrupts did not "actually litigate" the prior case or demonstrate that judgment can collaterally estop them from relitigating the same issues in the bankruptcy case.

This holding is consistent both with general rules of collateral estoppel and with the federal policies in bankruptcy cases.[72] In this manner, the court simultaneously ruled that a default judgment has no collateral estoppel effect, and that where bankrupts did not "actually litigate" state case in which creditor obtained default judgment against them on ground of fraud and misrepresentation, not even facts which were necessary to that judgment could collaterally estop them from relitigating the same issues in bankruptcy case when creditor sought ruling that claim was nondischargeable because of fraud.[73] In the instant case, there was also no opportunity to

---

[69] In re McMillan, 579 F.2d 289 (3d Cir. 1978).

[70] Id.

[71] Id.

[72] See 1B Moore ¶ 0.419(3. 6), at p. 3121.

[73] In re McMillan, 579 F.2d 289 (3d Cir. 1978).

litigate in the prior court and therefore the same principles regarding application of collateral estoppel to a default judgment apply here.

### iii.    Materiality and Relevance

The third requirement for collateral estoppel to apply is that the issue must have been material and relevant to the disposition of the first action. If the first court decided a matter related to the facts at issue, but the determination of the related matter was not material to the disposition of the first action, the determination of the related matter has no collateral estoppel effect on any subsequent action.[74] Here, the first action centered on whether a debt was owed by Petitioner; the issue of fraud-based dischargeability was immaterial and irrelevant to that action.

In *Landon v. Clark*, the court held that a judgment in a prior suit does not operate as an estoppel as to immaterial facts.[75]  Here, as in *Landon*, the claim in the prior action centered around the question of contract and breach; the new demand of non-dischargeability based on fraud was immaterial to that case, and was never litigated. Rather, this issue is a new claim.

### iv.    Essential and Necessary

The fourth requirement for collateral estoppel to apply is that the determination of the issue was essential and necessary to the prior judgment.  The situation where a creditor sues to recover a debt and bases the claim on breach of contract and fraud illustrates the essential and necessary requirement. If the first court renders a general verdict in favor of the creditor but is silent as to whether the creditor prevailed on the contract issue or the fraud issue, there is no collateral estoppel effect given to either the contract issue or the fraud issue.[76]

---

[74] Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings, 37 Wash. & Lee L. Rev. 281 (1980).
[75] Landon v. Clark, 221 F. 841 (2d Cir. 1915).
[76] Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings, 37 Wash. & Lee L. Rev. 281 (1980).

In the present case, not only did the first court remain silent as to the reason it rendered a verdict in favor of the creditor, the issue of fraud was never even raised by the parties, nor was it reflected in the final judgment. In an alternate situation where the first court specifically determines that there was a breach of contract but not fraud, the problem presented by the essential and necessary requirement becomes more acute. Although collateral estoppel effect will be given to the contract issue, the majority rule does not give collateral estoppel effect to the fraud issue.[77] Here, the court determined there was a breach of contract, but not fraud. Therefore, under the fourth requirement, collateral estoppel effect is not given to the fraud issue.

     v.    <u>Since the state court judgment is void ab initio, there is no estoppel.</u>

Finally, there is no need for the bankruptcy court to give deference to the state court judgment since the judgment was *void ab initio*. In Chapter 7 cases, the discharge automatically voids any judgment obtained at any time to the extent such judgment is a determination of the debtor's personal liability on a discharged debt.[78] Thus, even if a creditor proceeded to judgment after the bankruptcy, that judgment would be *void ab initio*.[79] Since the state court made a decision regarding a discharged debt, the judgment is void ab initio and this court need not defer to it.

     vi.    <u>The issue of dischargeability is under the exclusive jurisdiction of bankruptcy courts.</u>

---

[77] 1B Moore ¶ 0.443[5].

[78] 11 U.S.C. § 524(a)(1).

[79] In re Gurrola, 328 B.R. 158 (B.A.P. 8th Cir. 2005) (equitable estoppel did not permit creditor to enforce judgment that was void under section 524(a)(1)); In re Fernandez-Lopez, 37 B.R. 664 (B.A.P. 9th Cir. 1984) (permitting collateral attack in bankruptcy court on judgment obtained in violation of discharge); L.F. Rothschild & Co. v. Angier, 84 B.R. 274 (D. Mass. 1988); In re Dabrowski, 257 B.R. 394 (Bankr. S.D.N.Y 2001) (bankruptcy judge not required to give deference to judgment that was void under section 524(a)(1)). See In re Levy, 87 B.R. 107 (Bankr. N.D. Cal. 1988) (state court default judgment on claim that debt was not discharged is void when debt was, in actuality, discharged).

Even assuming, *arguendo*, that collateral estoppel or res judicata apply, this Court can still hear this case because Congress intended the bankruptcy courts to have exclusive jurisdiction of bankruptcy-specific issues.

In *Brown v. Felsen*, the Supreme Court held that even after a judgment by stipulation was entered in state court, the bankruptcy court should go outside the state court record to hear evidence on dischargeability issues.[80] The Court reasoned that applying res judicata to preclude the bankruptcy court from deciding the issue of dischargeability would frustrate congressional policy and intent to commit bankruptcy-specific issues to the bankruptcy courts. In *McMillan*, the court stated that the 1970 amendments to the Bankruptcy Act vested the bankruptcy courts with exclusive jurisdiction on questions of exceptions to discharge.[81] The Supreme Court reasoned that giving res judicata effect to state court proceedings would be inconsistent with the 1970 amendments.[82] In another case, the Court held that even when the general rule of concurrent jurisdiction applies, the bankruptcy court has exclusive jurisdiction to determine whether a debt is excepted from discharge under section 523(a)(2), (4), and (6).[83]

In the Attorney's Affirmation in Opposition, Respondents argue that, "the case law is absolutely clear and "settled that state courts have 'the power, subject to statutory exception, to determine the effect of a [bankruptcy] discharge."[84] Aside from the factual distinctions between that case and this one—in *Gianopolous*, the Complaint included the issue of non-dischargeability based on fraud and the default in that case occurred post-petition—it has been firmly established

---

[80] Brown v. Felsen, 99 S. Ct. 2205 (1979). 442 U.S. 127, 99 S. Ct. 2205, 60 L. Ed 2d 767 (1979).

[81] In re McMillan, 579 F.2d 289 (3d Cir. 1978).

[82] Id.

[83] In re Lopez, 2012 WL 3499444 at *4 (Bankr. S.D. Tex. 2012).

[84] Matter of Gianopolous, 579 F.2d 289 (3d cir. 1978).

that Congress intended the dischargeability cause of action to be decided only in the bankruptcy courts.[85]

In *In re Pigge*, the court held that in a proceeding to determine the dischargeability of a provable debt, the court may go beyond the record of the state court judgment and examine the circumstances on which the judgment was based.[86] The bankrupt argued that the state court judgment was based on the contract count, which fixed the nature of the objecting creditor's claim for purposes of dischargeability in bankruptcy.[87] Specifically, the debtor took the position that the Bankruptcy Court could not go behind the state court judgment or consider any evidence outisde the state record in ruling on dischargeability of the dissenting creditor's debt.[88] In answer, the court stated that section 17(a)(2) of the Bankruptcy Act declares that the exclusive jurisdiction to determine whether a debt is dischargeable is in Bankruptcy Court.[89] And when that debt has been previously reduced to judgment in a state court, the Bankruptcy Court, in the exercise of its exclusive jurisdiction to determine dischargeability, may look behind the judgment itself to the nature of the debt for which judgment was entered. In so doing, it is not confined to the state-court record; it may, when necessary to ascertain the nature of the debt, admit and consider extrinsic evidence.[90]

---

[85] In re Shuler, 722 F.2d 1253 (5th Cir. 1984); Carey Lumber co. v. Bell, 615 F. 2d 370 (5th Cir. 1980); In re Houtman, 568 F.2d 651 (9th Cir. 1978); In re Eskenazi, 6 B.R. 366 (B.A.P. 9th Cir. 1980); In re Tessman, 5 bankr. Ct. dec. 435, (there should be no collateral estoppel effect given to a prior state court decision when the bankruptcy court determines whether a debt is excepted from discharge by s 17a8 of the bankruptcy act which excepts willful and malicious injuries).

[86] Matter of Pigge, 539 F.2d 369 (1976).

[87] Id.

[88] Id.

[89] Id.

[90] Id.

Collier on Bankruptcy distinguishes a prior state court judgment based on liability from a subsequent bankruptcy case based on the issue of dischargeability, not on liability.[91] For the purposes of determining the dischargeability of the liability, the bankruptcy court should not be bound by the findings of the state court.[92]

Similarly, in another case in which a prior court had decided a liability issue, the court held that it was permissible, even necessary in the circumstances, for the bankruptcy court to inquire into the nature of the liability in order to determine whether it falls within the Bankruptcy Act, and further to inquire into the circumstances surrounding the creation of the debt or the entry of the judgment.[93]

The court in *Fierman*[94] took it a step further: where a judgment is involved and bankruptcy is pleaded as a bar to plaintiff's action on the judgment, the court is not concluded by the form of judgment, by recitals of the judgment, by the form of action nor even by the allegations of plaintiff's complaint but may resort to and examine the entire record to determine the character of the claim and whether it comes within the purview of 11 U.S.C. § 35.[95] Furthermore, in determining the nature of defendants' original liability, the Court may, in the instant case, hear extrinsic evidence to aid that determination.[96] As here, the state-court judgment in *Fierman* did

---

[91] 1A Collier on Bankruptcy § 17.16 (14th ed. 1975).

[92] Id.

[93] In re Johnson (3d Cir. 1963) 323 F.2d 574, 578; Martin v. Rosenbaum (9th Cir. 1964) 329 F.2d 817, 820; Greenfield v. Tuccillo (2d Cir. 1942) 129 F.2d 854, 856; Fierman v. Lazarus (E.D.Pa.1973) 361 F.Supp. 477, 480, aff'd (3d Cir.) 493 F.2d 1400.

[94] Fierman v. Lazarus (E.D.Pa.1973) 361 F.Supp. 477, 480, aff'd (3d Cir.) 493 F.2d 1400.

[95] Id.; see also In Re Riley, 266 App.Div. 160, 43 N.Y.S.2d 753, appeal dismissed, 294 N.Y. 825, 62 N.E.2d 245 (1943); Personal Finance Corporation v. Robinson, 27 N.Y.S.2d 6 (Sup.1941).

[96] Martin v. Rosenbaum, 329 F.2d 817 (9th Cir. 1964); Greenfield v. Tuccillo, 129 F.2d 854 (2nd Cir. 1942); Welsh v. Old Dominion Bank, 229 A.2d 455 (D.C.App.1967); Levin v. Singer, 227 Md. 47, 175 A.2d 423 (1961); National Surety Co. v. Lanza, 42 N.Y.S.2d 370 (Sup.1943).

not specify it was based on fraud. As discussed, this court must look beyond the judgment and examine the underlying cause of action in determining the nature of defendants' liability.[97]

      a. *Exclusive jurisdiction applies even when the fraud issue was litigated in the prior court.*

Some courts have gone so far as to hold that a bankruptcy court should not give collateral estoppel effect to a prior state court decision even when the state court litigated the issue of fraud.[98] *Houtman* reasoned that the 1970 amendments allowed no room to collaterally estop a state court decision, instead vesting the bankruptcy courts with the exclusive jurisdiction to decide dischargeability.[99] The court stated that the expertise of the bankruptcy court would be impaired if the court gave collateral estoppel effect to a prior state court's factual findings.[100]

In *In re Herman*, the court applied collateral estoppel after it found that the state-law standards and bankruptcy standards were virtually identical and the state-court jury in that case could have found fraud.[101] However, that case was decided before *Brown v. Felsen*, when the precedent for bankruptcy courts to hear issues of non-dischargeability was set. It distinguishable because there the state court considered the elements of fraud, whereas here the court never did.[102]

Like *Herman*, the case of *Heiser* suggested that there was no countervailing statutory policy against applying collateral estoppel when a prior state court decided the issue of

---

[97] See In Re Johnson, 323 F.2d 574 (3rd Cir. 1963).

[98] In re Houtman, 568 F.2d 651 (9th Cir. 1978).

[99] Id.

[100] Id.

[101] In re Herman, 6 B.R. 352 (D.C., S.D.N.Y.1980).

[102] This same distinction applied between the instant case and Houtman as well. Even if Houtman allows collateral estoppel effect to be given, that interpretation does not apply to the instant case in which the state court did not consider the issue of fraud at all.

dischargeability. [103] But, like *Herman*, *Heiser* was decided prior to the passing of the 1970 amendments.

Similarly, in *In re Walshak*, the court gave collateral estoppel effect to a state court decision regarding dischargeability. Yet that was only because the state court made specific findings of fraud based on the bankruptcy standards.[104] In the instant case, the court did not consider the issue of fraud.[105]

In contrast, *In re* Pigge is analogous to the instant case since the issue of fraud was not litigated in the state court; only issues "which have been necessarily litigated" in state court are entitled to res judicata and collateral estoppel effect.[106]

## IV.    **CONCLUSION**

For the foregoing reasons, Debto respectfully requests that the Court grant Debtor's motion to reopen this bankruptcy case.

Dated:  Brooklyn, New York
       July 11, 2019

Respectfully submitted,

/s/ *Joseph Y. Balisok*
Joseph Y. Balisok
Balisok & Kaufman, PLLC
Attorneys for Debtor
251 Troy Avenue
Brooklyn, NY 11213
Tel. No. (718) 928-9607
Fax No. (718) 534-9747
Email: joseph@lawbalisok.com

---

[103] Heiser v. Woodruff 327 us 726 (1946).

[104] In re Walshak, 3 Bankr. Ct. Dec. 118, 119 (W.D. Pa. 1977).

[105] In re Walshak, 3 Bankr. Ct. Dec. 118, 119 (W.D. Pa. 1977).

[106] Matter of Pigge, 539 F.2d 369 (1976).